**Alyson Ann ALLISON**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al.**

Civ. A. No. 92–198–A.

United States District Court,
M.D. Louisiana.

March 26, 1993.

Robert G. Jackson, Kathryn Wyble, Jackson, Shapiro & Wyble, APLC, Baton Rouge, LA, for plaintiff Alyson Ann Allison.

Gerald F. Slattery, Jr., Schully, Roberts & Slattery, New Orleans, LA, for defendant and plaintiff-in-counterclaim F.D.I.C.

C. Michael Curran, Joy D. Schmitt, Akin, Gump, Hauer & Feld, LLP, Dallas, TX, F. Randall Garrett, Preis & Crawford, Baton Rouge, LA, for defendants-in-counterclaim James N. Allison and Melissa C. Allison.

## RULING ON MOTIONS

JOHN V. PARKER, Chief Judge.

This matter is before the court on cross motions for summary judgment filed by the FDIC, by Alyson Ann Allison, by James N. Allison, III, and Melissa C. Allison. There is no need for oral argument. Jurisdiction is allegedly based upon 28 U.S.C. § 1331.

The salient issue raised by the motions is whether certain annuities and life insurance policies purchased by the Allisons are exempt from seizure by the FDIC, a judgment creditor. It is undisputed that the United States District Court for the Northern District of Texas granted summary judgment in favor of the NCNB Texas National Bank and against Alyson Ann Allison and James N. Allison, III, on May 31, 1991, in an amount exceeding ten million dollars[1]. Between April 7th and June 24th of 1991, the Allisons expended almost five million dollars in purchasing several annuities and life insurance policies in Louisiana.

On November 17, 1991, NCNB obtained leave from the federal district court in Texas to register its judgment in other districts pending appeal. Shortly thereafter, NCNB assigned its rights under the judgment to FDIC. On January 6, 1992, FDIC commenced an action in this court to obtain a writ of fieri facias and garnishment against the insurance companies, Misc. Action No. 756–A. On January 7, 1992, a writ of fieri facias was issued directing the Marshal to seize and sell property of the Allisons to satisfy the Texas judgment. It seems that Alyson's policies were then seized pursuant to the writ and James' policies were subsequently delivered to the Marshal pursuant to a stipulation in the Texas proceedings.

On March 9, 1992, Alyson Allison commenced this action against the FDIC and the United States Marshal for this district, seeking declaratory and injunctive relief relating to the seizure of her annuities and life insurance policies. At a status conference held on March 10, 1992, the parties agreed that there would be no judicial sale of the annuities or insurance contracts pending the court's determination as to whether they are exempt from seizure. The FDIC then asserted counter and third party claims against the Allisons and the insurance companies. On June 2, 1992, the Fifth Circuit affirmed the Texas judgment against the Allisons.

Thereafter, the parties brought the cross motions for summary judgment presently before the court. As previously noted, the prominent issue raised by the parties is whether the annuities and life insurance policies are exempt from seizure under Louisiana law. Essentially, the parties contend that this is a res nova[2] matter of statutory interpretation of La.R.S. 20:33 and La.R.S. 22:647.

---

1. See FDIC's exhibits nos. 1 and 2.

2. The only case cited by the parties involving these statutes is *Matter of Young,* 64 B.R. 611 (E.D.La.1986), affirmed 806 F.2d 1303 (5th Cir. 1987). The primary issue in that case involves a determination as to whether certain payments made to the debtor should be classified as annuities or accounts receivable. The case lends little guidance to the issues of statutory construction at hand.

## Annuities

■ The parties agree that in Louisiana, the general, long-standing rule provided by La.R.S. 20:33(1) and La.R.S. 22:647(B) is that payments, proceeds or avails of annuity contracts are exempt from seizure by creditors. Section 33(1) of Title 20 (Exemptions), as it read prior to 1983, clearly exempted all annuities from seizure for any debts other than alimony and child support:

The following shall be exempt from all liability for any debt except alimony and child support:

(1) All pensions and all proceeds of and payments under annuity policies or plans . . .

The state's policy of making proceeds of annuities exempt from seizure has additionally been set forth, since at least 1948, in section 647(B) of the Insurance Code[3] as follows:

B. The lawful beneficiary, assignee, or payee, including the annuitant's estate, of an annuity contract . . . shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant . . . and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.

While these two provisions do conflict relative to alimony and child support, the intent of the Louisiana Legislature to otherwise exempt the proceeds and avails of annuities from seizure is clear.

By Act 362 of 1983, the Legislature amended La.R.S. 20:33(1) (but not the companion provision in the Insurance Code, La. R.S. 22:647(B)) to additionally exempt from seizure:

. . . all individual retirement accounts, all Keogh plans, all simplified employee pension plans, and all other plans qualified under Sections 401 or 408 of the Internal Revenue Code. However, an individual retirement account, Keogh plan, simplified employee pension plan, or other qualified plan is only exempt to the extent that contributions thereto were exempt from federal income taxation at the time of contribution, plus interest or dividends that have accrued thereon . . .

■ The court concludes that the purpose of the 1983 amendment was not to restrict the exemption of the proceeds of annuities but to additionally exempt newly created financial arrangements, which had been generated by the provisions of the federal Internal Revenue Code. At least one court had held in 1981 that an IRA did not fall within the exemption afforded "annuities". See *In re Talbert*, 15 B.R. 536 (Bankr.W.D.La.1981). The 1983 amendment was apparently a response to the bankruptcy court ruling and was intended to extend the exemption from seizure to IRAs, Keogh plans and the like to the extent that "contributions" thereto were exempt from federal income taxation at the time of the contribution.

To this point, it is clear that the 1983 amendment had no effect on annuity policies that are not exempt from federal income taxation, such as those purchased by the Allisons. However, the 1983 amendment to § 33(1) further provided:

. . . No contribution shall be exempt if made less that (sic) one calendar year from the date of filing for bankruptcy . . . or less than one calendar year from the date writs of seizure are filed against such account or plan.

FDIC contends that the final sentence added to § 33(1) is intended to pertain to "contributions" to annuities, as well as IRAs, Keogh plans, and the like. Under the FDIC's interpretation, this sentence would permit the seizure of the annuities at issue as they were purchased by the Allisons within one year of the issuance of the writ of fiera facias by this court.

The court disagrees with FDIC's analysis. The use of the word "contributions" in the final sentence apparently was intended as a further qualification to the exemption from

---

**3.** The court observes that the Insurance Code was extensively revised in 1991. See § 3042, effective January 1, 1993. However, the 1991 amendments make no substantive changes to the provisions at issue.

seizure extended to IRAs, Keogh plans, etc. In other words, the first sentence was amended to additionally exempt IRAs, Keogh plans, etc. The second sentence was added to limit the exemption afforded IRAs, Keogh plans, etc. to tax exempt "contributions". The third sentence was added to place a further limitation on the exemption for IRAs, Keogh plans, etc., by allowing seizure of any tax exempt "contributions" when made less than one year from the date of filing for bankruptcy or from the date "writs of seizure are filed against **such account or plan**".

█ In the absence of language that clearly relates the final sentence back to "annuity policies or plans", the court finds it unlikely that the Legislature intended the 1983 amendment to have any effect on the long standing exemption afforded annuities. Indeed, the phrase "such account or plan" indicates the final sentence relates to IRAs, Keogh plans and the like rather than annuity policies and plans. The court's conclusions are further supported by the fact that the Legislature did not amend the companion exemption afforded annuities in the Insurance Code, La.R.S. 22:647(B) in 1983.[4] Thus, the court concludes that the annuity policies purchased by the Allisons are exempt from seizure under La.R.S. 20:33.[5]

### Life Insurance Policies

Since at least 1948, payments and proceeds of life insurance policies have been exempt from seizure by creditors in accordance with La.R.S. 22:647. Prior to 1987, § 647(A) set forth the general rule pertaining to life insurance policies as follows:

A. The lawful beneficiary, assignee, or payee, including the insured's estate, of a life insurance policy ... shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured ... and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.

In 1987, the Legislature added a sentence to paragraph (A), which provides that the "proceeds and avails" of a life insurance policy includes the cash surrender value of the policy. Then in 1990, the Legislature renumbered paragraph (A) as (A)(1) and added subsection (A)(2), which provides as follows:

(2) **The exemption authorized in Subsection (A)(1) from seizure** under any writ, mandate, or process issued by any court of competent jurisdiction, including any bankruptcy proceedings, **shall not apply to that portion of the cash surrender value, or loan value of any life insurance policy, ... or annuity contract[6] payable upon surrender during the lifetime of the insured or annuitant which exceeds the sum of thirty-five thousand dollars if such policy or contract was issued within nine months of issuance of such writ**, mandate, or process or the filing of a voluntary or involuntary bankruptcy pro-

---

4. The court observes that the 1990 amendment to § 647 adding subparagraph (1)(B) is drawn in such a fashion that it might be found to effect the exemption for annuities set forth in paragraph (2). However, for reasons given hereafter, the court concludes that the 1990 amendment relates only to life insurance policies and that the blanket exemption afforded annuities in the Insurance Code remains unchanged to this date.

5. A like provision exempting IRAs, Keogh plans, etc., under the same conditions as specified in § 33(1), was added to section 3881 (as paragraph D) of Title 13 (dealing with seizures generally) in 1990. According to the minutes of the Civil Law and Procedure Committee meeting held on May 29, 1990, the law was not changed but simply "moved" to "a position of prominence" where it "can be easily found". While the Law Institute divided paragraph D into two subparts in moving the law, the legislature history makes it plain that this was not intended to be a substantive change in the law. Therefore, the court concludes that the 1990 amendment to § 3881(D) is of no real consequence to the issue at hand.

6. While the text of subsection (A)(2) refers to both life insurance policies and annuity contracts, the introductory phrase indicates that subsection (A)(2) qualifies subsection (A)(1) which pertains solely to insurance policies. Both sides agree that references to annuities were mistakenly included in the text of subsection (A)(2) and the legislature did not intend for the amendment to apply to annuities. The court agrees based upon the placement of the amendment and the legislative history provided by FDIC. The court also notes that annuity contracts do not normally have cash surrender values or loan values, as life insurance policies routinely do.

ceeding under the United States Code. However, an insurer shall be liable only for such amounts that exceed the thirty-five thousand dollar exemption which are in the insurer's possession at the time the insurer receives, at its home office, written notice by or on behalf of a creditor of claims being made against such value or interest with specification of the amount claimed ..." (Emphasis added.)

The minutes of the Senate Committee on Judiciary meeting held July 3, 1990, provide:

... A couple of years ago, the Insurance Code was amended to provide that the cash surrender value of insurance policies was exempt from seizure. Since that time, there have been many new types of insurance products, mostly single premium policies, and this has created a situation where debtors, prior to taking bankruptcy, are liquidating assets, putting assets into these single premium policies, taking bankruptcy, having the debts discharged, and then taking the cash surrender value out of the policy. This bill would say that the exemption from seizure applicable to the cash surrender value would not apply to a policy which is purchased within nine months of taking bankruptcy. It would allow the first $35,000 to be exempt, but anything above $35,000 when purchased within that nine month period prior to bankruptcy, would not be exempt.

The court concludes that paragraph (A)(2) exempts only the first $35,000 of the cash surrender value of a life insurance policy when a policy is issued within nine months of the issuance of a writ. Accordingly, the court finds that the life insurance policies purchased by the Allisons are subject to seizure under the statute.

An additional issue raised by the parties is whether the cash surrender value of the life insurance policies should be fixed at the time of notification of seizure to the insurers (as argued by the Allisons) or may be based upon the "full surrender value" payable during the lifetime of the insured (as argued by FDIC). The legislative history suggests that the 1990 amendment was intended to provide a creditor full access to the cash surrender value of its life insured debt-

ors, reserving the first $35,000 of the cash surrender or loan value of a policy.

In conclusion, the court finds that annuities are statutorily exempt from seizure in toto but that only the first $35,000 of the cash surrender value of each of the life insurance policies is statutorily exempt and that the insurance policies may be sold at public auction by the Marshal.

Accordingly, the motion by FDIC for partial summary judgment is hereby GRANTED IN PART AND DENIED IN PART and the motions by the Allisons for summary judgment are hereby GRANTED IN PART AND DENIED IN PART.